J-S28009-19

2019 PA Super 349

| | | |
|---|---|---|
| DOMUS, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SIGNATURE BUILDING SYSTEMS OF | : | |
| PA, LLC | : | |
| | : | No. 1547 MDA 2018 |
| Appellant | : | |

Appeal from the Order Entered August 2, 2018
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2015 Civil 4440

BEFORE: BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

OPINION BY BOWES, J.: **FILED NOVEMBER 26, 2019**

Signature Building Systems of PA, LLC ("Signature") appeals from the August 2, 2018 order that denied its motion to strike a foreign judgment obtained by Appellee Domus, Inc. ("Domus") in New Hampshire, and executed in this Commonwealth pursuant to the Pennsylvania Uniform Enforcement of Foreign Judgments Act ("UEFJA"), 42 Pa.C.S. § 4306. After careful review, we reverse.

This case arose as a contractual dispute between Signature and Domus with respect to a residential construction project at Dartmouth College in Hanover, New Hampshire. Domus contracted with Signature for the latter to provide modular units. Domus alleged that the units Signature delivered were defective and that Domus suffered damages as a result.

---

* Retired Senior Judge assigned to the Superior Court.

On October 17, 2011, Domus filed suit against a third-party inspection entity, PFS Corporation ("PFS"), which had entered into a separate contract with Signature and was responsible for inspecting and certifying the condition of the at-issue modular residential units. PFS, with permission from the New Hampshire trial court, added Signature as a party-defendant via a third-party complaint. *See* New Hampshire Trial Court Docket, 6/29/15, at 2. That same day, the New Hampshire trial court entered an order of notice of service upon Signature. On April 12, 2012, PFS filed an affidavit of service averring that Signature had been served with notice and relevant copies of PFS's third-party complaint filings via certified mail. *See* PFS Affidavit of Service, 4/11/12, at 1-5. The affidavit included a copy of the certified mail receipt and tracking information confirming that the notice was delivered to Signature's Pennsylvania offices at 1004 Springbrook Avenue, Moosic, Pennsylvania 18507, which is located in Lackawanna County. *Id*. On June 20, 2012, PFS filed a supplemental affidavit attesting that Signature did not maintain offices in New Hampshire. *See* PFS Supplemental Affidavit of Service, 6/20/12, at 1. The next day, the New Hampshire trial court entered a notice of default against Signature with respect to PFS' third-party claims. *Id*. On November 28, 2012, counsel for Signature entered an appearance, but subsequently withdrew those appearances on January 28, 2013.

On April 19, 2013, Domus filed, again with permission from the New Hampshire trial court, a third-party complaint against Signature in the same proceeding. Thereafter, an order of notice for service upon Signature was

- 2 -

issued by the New Hampshire trial court. On June 21, 2013, Domus sent copies of its third-party complaint and relevant documents to the Lackawanna County Sheriff's Office to effectuate in-person service upon Signature. On July 2, 2013, Domus filed in New Hampshire an affidavit of service from the Lackawanna County Sheriff indicating that a deputy hand-delivered a copy of Domus' third-party complaint to Signature's offices on June 25, 2013, by handing them to a "person in charge" named Briana Kresge. *See* Lackawanna County Sheriff's Affidavit of Service, 6/25/13, at 1. Domus contemporaneously filed a return of service. However, on July 29, 2013, the New Hampshire trial court declined to issue a default notice with respect to Domus' third-party claims against Signature.[1]

Thereafter, Domus filed a motion to extend time for service upon Signature, which the New Hampshire trial court granted on September 11, 2013. That same day, the New Hampshire trial court issued a renewed order of service upon Signature. Pursuant to this order of service, Signature was given until December 3, 2013 to "file a written appearance form" with the New Hampshire trial court. *See* Order of Service, 9/11/13, at unnumbered 1. On September 19, 2013, Domus caused the Merrimack County Sheriff's Department to serve copies of the relevant documents upon the New Hampshire Secretary of State. *See* Merrimack County Sheriff Affidavit of

---

[1] The reason for the New Hampshire trial court's initial refusal to enter a default is not evident from the contents of the certified record, and neither party has offered an explanation beyond noting that the default was refused.

Service, 9/19/13, at unnumbered 1. Domus also sent copies of the relevant filings via certified mail to Signature's office location in Lackawanna County, which were delivered on October 23, 2013. **See** Domus Affidavit of Service, 11/4/13, at 1-2, 4-6. Domus filed an affidavit of service attesting to these events with the New Hampshire trial court on November 5, 2013. That same day, Domus also filed a return of service from the New Hampshire Secretary of State with respect to Signature.

On December 10, 2013, the New Hampshire trial court entered a finding of default against Signature as to the third-party claims filed by Domus for failure to file an appearance. **See** Notice of Default, 12/10/13, at unnumbered 1. Three days later, Domus filed a motion for hearing as to final judgment requesting an opportunity to "present evidence of damages," which was granted. Following a hearing on February 24, 2014, the New Hampshire trial court entered a final judgment in favor of Domus and against Signature in the amount of $293,081.00 with "interest at 2.1% from September 11, 2013." **See** Final Judgment, 2/24/14, at 1-2.

On July 28, 2015, Domus flied a praecipe for writ of execution in the Court of Common Pleas of Lackawanna County, seeking to levy the default judgment upon Signature's real and other property in the amount of $314,252.74. On August 10, 2015, Signature filed a motion to strike the foreign judgment, arguing that "[a]t no time after August 2013 did Signature receive any notice concerning any proceedings in the action filed in New Hampshire." **See** Motion to Strike Foreign Judgment, 8/10/15, at ¶ 5.

- 4 -

Signature also argued that Domus had not complied with the affidavit and authentication requirements set forth in the UEFJA. *Id.* at ¶ 11. By way of explanation for its prolonged absence from the New Hampshire proceedings, Signature averred: "Signature was briefly represented by counsel in the New Hampshire action; however, it withdrew its defense since the action had been brought in violation of the aforesaid arbitration agreement."[2] *Id*. at ¶ 4. The Pennsylvania trial court issued a rule to show cause. Thereafter, the parties engaged in extensive discovery and briefing concerning the validity of the New Hampshire default judgment. A hearing was held on July 24, 2018, and post-hearing briefs from both parties were entertained.

On August 2, 2018, the Pennsylvania trial court denied Signature's motion to strike foreign judgment, concluding that "when a [d]efendant receives notice and fails to participate in the proceedings, 'due process doesn't require notice of [plaintiff's] intent to enter a default judgment or of their intent to take procedural steps to reduce their judgment to a monetary

---

[2] Our review of the relevant New Hampshire and the Pennsylvania dockets and filings indicates that Signature has never made any argument that the above-referenced arbitration clause has any impact upon the validity of the New Hampshire action, or the default judgment obtained by Domus. More importantly, Signature has not advanced any such claims in its briefing before this Court. The only mention of such in the filings relevant to this appeal is an unadorned and unexplored mention in Signature's Rule 1925(b) filing. **See** Rule 1925(b) Statement, 10/26/18, at ¶ 2. As such, we will not inquire further. **See Irwin Union Nat. Bank and Trust Co. v. Famous**, 4 A.3d 1099, 1103 (Pa.Super. 2010) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.").

amount.'"  Order, 8/2/18, at ¶ 16 (quoting **Noetzel v. Glasscow**, 487 A.2d 1372, 1376 (Pa.Super. 1985)).

Signature filed a timely notice of appeal to this Court.  The Pennsylvania trial court directed Signature to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Signature timely complied, and the Pennsylvania trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).  Signature raises two separate issues for our disposition: (1) whether the Pennsylvania trial court erred in refusing to strike the foreign judgment where "there is an insufficient affidavit filed at the time the judgment was transferred;" and (2) whether the Pennsylvania trial court erred in refusing to strike Domus' foreign judgment when "the docket entries show no notice to [Signature] of a trial assessing damages."  Signature's brief at 2.

The applicable principles guiding our review are well-established: "Our standard of review from the denial of a petition to strike a judgment is limited to whether the trial court manifestly abused its discretion or committed an error of law."  **Reco Equipment, Inc. v. John T. Subrick Contracting, Inc.**, 780 A.2d 684, 686 (Pa.Super. 2001).  In this context, "[a] petition to strike a judgment operates as a demurrer to the record, and must be granted whenever some fatal defect appears on the face of the record."  **Oswald v. WB Public Square Associates, LLC**, 80 A.3d 790, 793-94 (Pa.Super. 2013).

As a general proposition, "[t]he full faith and credit clause of the United States Constitution requires state courts to recognize and enforce the judgments of sister states."  **Id.** (citing U.S. CONST., Art. 4, § 1).  In

Pennsylvania, this constitutional mandate is fulfilled via the UEFJA, *see Ward v. Price*, 814 A.2d 262, 263 (Pa.Super. 2002), which provides as follows:

> **(b) Filing and status of foreign judgments.**—A copy of any foreign judgment including the docket entries incidental thereto **authenticated in accordance with act of Congress or this title** may be filed in the office of the clerk of any court of common pleas of this Commonwealth. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. **A judgment so filed** shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

42 Pa.C.S. § 4306(b) (emphasis added). Thus, parties seeking to enforce a foreign judgment must properly authenticate the underlying documentation. *Id*. In relevant part, parties must authenticate such records under either federal law, *see* 28 U.S.C. § 1738, or under Pennsylvania law, *see* 42 Pa.C.S. § 5328. *See Medina & Medina, Inc. v. Gurrentz Intern. Corp.*, 450 A.2d 108, 109 (Pa.Super. 1982).

We begin by addressing Signature's contention that Domus failed to provide a properly authenticated judgment pursuant to the UEFJA. However, before adjudicating the claim on its merits, we must separately determine whether Signature has waived this claim under the Pennsylvania Rules of Appellate Procedure. *See* Domus brief at 15-19. Domus strenuously argues that Signature has waived this claim under a variety of theories, including Pa.R.A.P. 302(a) (failing to raise issue in lower court), Pa.R.A.P. 1925(b) (failing to include issue in concise statement), Pa.R.A.P. 2116(a) (failing to

include issue in statement of questions presented), Pa.R.A.P. 2117(c) (failing to identify nature of issue preservation), and Pa.R.A.P. 2119(e) (failing to include a statement of place of raising of preservation of issues). ***Id***. at 8-9, 15-19.

Domus appears to have overlooked mentions of this issue in Signature's earlier motions practice before the Pennsylvania trial court. ***See*** Motion to Strike Foreign Judgment, 8/10/15, at ¶ 11. But Domus **is** correct in observing that Signature neglected to include this issue in its Rule 1925(b) statement. Normally, this would result in waiver. ***See*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."). However, the precise issue raised by Signature regarding the lack of a properly authenticated foreign judgment is one of jurisdictional gravity under the precedent of this Court. ***See Ward***, ***supra*** at 264 ("Since [a]ppellant did not file an authenticated copy of the judgment of record, **the common pleas court was without jurisdiction to enforce the purported judgment** . . . ." (emphasis added)).

Although we did not explicitly utilize the term "subject matter jurisdiction" in our holding in ***Ward***, we readily discern that this issue "involves the competency of a court to hear and decide the type of controversy before it." ***Cobbs v. SEPTA***, 985 A.2d 249, 254-55 (Pa.Super. 2009). Our case law interpreting the UEFJA also states that "a foreign judgment entered without jurisdiction is a nullity" and, thus, void. ***Commonwealth Capital Funding, Inc. v Franklin Square Hospital***, 620 A.2d 1154, 1156 n.2 (Pa.Super. 1993). To that point, we have also long held that "a litigant may seek to strike

a void judgment at any time." ***Oswald v. WB Public Square Associates, LLC***, 80 A.3d 790, 793 n.2 (Pa.Super. 2013). As such, since this claim speaks to the subject matter jurisdiction of the trial court to hear this controversy in the first instance, it is not subject to waiver. ***See Cobbs***, ***supra*** at 255 ("Any issue going to the subject matter of a court to act in a particular matter is an issue that cannot be foreclosed by agreement, estoppel, or waiver.").

Turning to the substance of Signature's claim that Domus has failed to properly certify the underlying foreign judgment in this case, we must examine the statutory requirements for such authentication. Under Pennsylvania law, a "domestic record" may be authenticated as follows:

> **(a) Domestic record.—**An official record kept within the United States, or any state, district, commonwealth, territory, insular possession thereof, or the Panama Canal Zone, the Truth Territory of the Pacific Islands, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by a judge of a court of record having jurisdiction in the governmental unit in which the record is kept, authenticated by the seal of the court, or by any public officer having a seal of office and having official duties in the governmental unit in which the record is kept, authenticated by the seal of his office.

42 Pa.C.S. § 5328(a). Federal law provides a similar analogue stating in pertinent part as follows:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

28 U.S.C. § 1738 (emphasis added).

The relevant commonality to note between these two statutes for the purposes of this case is that both require a separate certificate to accompany the foreign judgment. Pennsylvania law requires a certificate regarding the custody of the original document, while federal law requires a certificate from the issuing court attesting that the document being transferred is "in proper form." Regardless of which authentication method is utilized, a certificate is required. **Compare** 42 Pa.C.S. § 5328(a) **with** 28 U.S.C. § 1738.

It is unclear from the record before us under which authentication process Domus intended to proceed in this case, although its brief suggests its intent was to utilize § 5328(a). **See** Domus' brief at 19 ("[T]he NH judgment and docket entries were adequately certified/authenticated/attested by that jurisdiction in accordance with 42 Pa.C.S. §§ 4306(b) and 5328(a).").[3] Ultimately, this is a distinction without a difference because **no certificate** is

_____

[3] Domus' averment in its brief to this Court that they have fully complied with these statutory provisions amounts to a bald statement of compliance without the necessary supporting evidence. In relevant part, Domus attached a scanned copy of the final judgment from New Hampshire that was stamped with a seal to confirm its authenticity and signed by an individual averring to be a "Court Assistant." However, there is nothing that can even charitably be construed as a certificate that either speaks to which government officer has custody of the original document, **see** 42 Pa.C.S. § 5328(a), or that confirms that the judgment is in its proper format. **See** 28 U.S.C. § 1738. Domus has declined to direct our attention to such a filing, and our thorough review of the certified record has uncovered no such certificate.

attached to the copy of the purportedly final judgment accompanying the initiating praecipe that Domus filed in the Lackawanna County Court of Common Pleas. **See** Domus Praecipe, 7/16/15, at unnumbered 1-10. The at-issue judgment is, thus, facially invalid due to the lack of a certificate. **See**

***Webb v. Consumer Auto Leasing, Ltd.***, 340 A.2d 865, 867 (Pa.Super. 1975) (concluding that a foreign judgment from New York was not properly authenticated in Pennsylvania under § 1738 because "it lacks a certificate of a judge of the court that the said attestation is in proper form").[4] Case law from our brethren in the Commonwealth Court also suggests that the lack of a proper certificate under § 5328(a) undermines the validity of foreign documents in Pennsylvania.[5] **See Rhoads v. Commonwealth**, 620 A.2d 659, 663 (Pa.Cmwlth. 1993) ("[W]hen section 5328(a) is used as a basis for

---

[4] Our holding in ***Webb v. Consumer Auto Leasing, Ltd.***, 340 A.2d 865, 867 (Pa.Super. 1975), was later distinguished by this Court in ***Medina & Medina, Inc. v. Gurrentz Intern. Corp.***, 450 A.2d 108, 109 n.2 (Pa.Super. 1982), solely on the grounds that **Webb** suggested that § 1738 was the exclusive method to authenticate foreign judgments in Pennsylvania. At the time **Webb** was decided, "there were no existing state statutes relating to . . . the method of authentication." **Webb**, **supra** at 867. As we later observed in **Medina**, "[a]lthough that statement was true when written, our legislature has since adopted the present version of the Judicial Code, rendering appellant's contention patently frivolous." **Medina**, **supra** at 109 n.2. The basic holding in **Webb** as it relates to the preclusive effect of a lack of a certificate remains valid for the purposes of this opinion.

[5] While we are "not bound by the decisions of the Commonwealth Court," we cite such decisions as "persuasive authority." **Petow v. Warehime**, 996 A.2d 1083, 1088 n.1 (Pa.Super. 2010). Overall, "we may turn to our colleagues on the Commonwealth Court for guidance where appropriate." **Id**.

such an admission in Pennsylvania, obviously, the certification must conform to the requirements of that section . . . .").[6]

The issue of whether the lack of this certificate under § 5328(a) is fatal for the purposes of authentication under the UEFJA appears to be an issue of first impression, and our review of the relevant case law has uncovered no opinions squarely on point. However, the statutory language of the UEFJA predicates the co-equal treatment of foreign judgments in Pennsylvania upon complete adherence to these authentication procedures. *See Ward*, *supra* at 263. Moreover, this Court has held that the requirements of the UEFJA are **not** discretionary, and we have espoused a policy of strictly interpreting the requirements set forth under the UEFJA. *Id*. at 264 (rejecting an invitation to "artificially . . . create a discretionary standard that our legislature did not intend" under the UEFJA). As such, we conclude that the authentication

---

[6] The holding in *Rhoads v. Commonwealth*, 620 A.2d 659 (Pa.Cmwlth. 1993) addressed whether the Pennsylvania Department of Transportation had adequately authenticated a record of an out-of-state DUI conviction under § 5328(a). Following the holding in *Rhoads* that such authentication had not been satisfied, the General Assembly adopted amendments at 75 Pa.C.S. § 1550(d) ("Documentation") that "lessened the Department's burden" in authenticating such documents. *See Mackall v. Comm., Dept. of Transp., Bureau of Driver Licensing*, 680 A.2d 31, 34 (Pa.Cmwlth. 1996). Thus, *Mackall* distinguished *Rhoads* to the extent that the intervening adoption of § 1550(d) had changed the state of the law with respect to the Pennsylvania Department of Transportation. The portion of the holding in *Rhoads* regarding non-compliance with § 5328(a) was unaffected by this development.

requirements contained within the UEFJA must be viewed strictly in this context and are not "discretionary."

Based on the foregoing discussion, Domus' failure to attach a certification pursuant to either § 1738 or § 5328(a) undermines its attempts to authenticate the New Hampshire default judgment pursuant to the UEFJA. ***Accord Webb***, ***supra*** at 867; ***Rhoads***, ***supra*** at 663. As a result of this deficiency, the Pennsylvania trial court lacked jurisdiction from the inception of Domus' efforts to enforce the New Hampshire judgment in Pennsylvania.[7]

---

[7] The learned Concurrence has expressed concern regarding this conclusion, arguing that the authentication requirements under the UEFJA should mirror verification procedures under Pa.R.Civ.P. 1024 by permitting "substantial compliance" and essentially excusing foreign judgments that lack authentication as required by § 4306(b). ***See*** Concurring Opinion at 2 ("Because verification merely is necessary for the protection of the party, this Court has rejected the notion that verification is required to invoke the jurisdiction of the lower court."). As an initial matter, we note that this opinion does not include any issues that arguably touch upon Rule 1024 practice. Moreover, as the Concurrence acknowledges, our Supreme Court has explicitly held that the lack of verification **does** implicate issues of jurisdictional dimension and is, accordingly, not subject to waiver. ***See In re Opening of Ballot Boxes***, ***Montour County***, 718 A.2d 774, 777 (Pa. 1998). We also note that the additional case law cited by the Concurrence regarding its "grave doubts" do not arise in the context of foreign judgments, but merely address situations in which a required verification for a domestic pleading has actually been submitted but was simply signed by the wrong individual. ***See Monroe Contract Corp. v. Harrison Square, Inc.***, 405 A.2d 954, 958 (Pa.Super. 1979) (concluding that a verification signed by attorney and not party sufficiently complied with Rule 1024); ***Rupel v. Bluestein***, 421 A.2d 406, 410 (Pa.Super. 1980) (same); ***George H. Atlof, Inc. v. Spartan Inns of America, Inc.***, 441 A.2d 1236, 1238 (Pa.Super. 1982) (same). By contrast in this case, no certification was submitted at all. Finally, we note that the strict precedent governing compliance with § 4306(b) explicitly disapproves of any such deferential standard of review. ***See Ward***, ***supra*** at 263.

***Accord Ward***, ***supra*** at 264. Therefore, the trial court committed an error of law in not striking the foreign judgment because a fatal defect appears upon the face of the record. Since we have determined that Signature is entitled to relief based upon this first issue, we will not address the second issue related to notice.[8]

Order reversed. Judgment stricken. Jurisdiction relinquished.

Judge McLaughlin joins the memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2019

---

[8] Our holding does not address the validity of the underlying judgment in New Hampshire, but is confined to a narrow conclusion that Domus has not successfully invoked the jurisdiction of the Pennsylvania trial court as a result of its failure to comply with the strictures of the UEFJA.